UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER VANGUILDER,

                              Plaintiff,

                                                        9:09-CV-1416
v.                                                      (GTS/DRH)

LORI MONTROY, Adm. Nurse, Franklin C.F.;
SGT. BARNES, Franklin C.F.; and
C.O. DOE, Franklin C.F.,

                              Defendants.
_____

APPEARANCES:

CHRISTOPHER VAN GUILDER
    Plaintiff, *Pro Se*
7 Fuller Road
South Glens Falls, NY 12803

HON. GLENN T. SUDDABY, United States District Judge

## **MEMORANDUM-DECISION and ORDER**

Currently before the Court in this *pro se* prisoner civil rights action filed by Christopher Van Guilder ("Plaintiff") are (1) Plaintiff's Amended Complaint, which he submitted in an attempt to comply with this Court's Decision and Order of March 18, 2010 (the "March Order"), and (2) his motion for leave to file a Supplemental Complaint. (Dkt. Nos. 4-5, 7.) For the reasons set forth below, all of the claims asserted in this action are dismissed; and Plaintiff's motion for leave to file a Supplemental Complaint (Dkt. No. 7) is denied. The Clerk's Office is instructed to issue a Judgment for Defendants and close this action.

## I.    RELEVANT BACKGROUND

In the March Order, the Court accepted for filing Plaintiff's excessive-force claim against C.O. Doe, and Plaintiff's failure-to-protect claim against Sergeant Barnes. (Dkt. No. 4, at 9-10.)[1] However, in addition to dismissing one of Plaintiff's claims with prejudice (specifically, his claim for monetary relief against the New York State Department of Correctional Services or "DOCS"), the Court conditionally dismissed Plaintiff's remaining claims against Defendant Montroy and the fourteen persons and one entity not named as Defendants in the action for failure to state a claim upon which relief could be granted. (*Id.* at 10-18.)[2]

Generally, in doing so, the Court found as follows: (1) Plaintiff failed to state a claim against Defendant Lori Montroy because, although he named her as a Defendant in the caption of his Complaint, the body of the Complaint contained no allegations whatsoever against her; (2) Plaintiff failed to state a claim against Defendant Sergeant Dumas based on his issuance of a false misbehavior report; (3) Plaintiff failed to state a claim against Defendant Lieutenant Guerin based on his handling of Plaintiff's disciplinary hearing arising from the alleged false misbehavior report issued by Defendant Dumas; (4) Plaintiff failed to state a conspiracy claim against Defendants Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, and Demars; (5) Plaintiff failed to state a claim against Defendants Brown, LaClaire, Commissioner Fisher, Parole Officer Fisher, and Parole Officer

---

[1]    However, the Court advised Plaintiff that he needed to identify C.O. Doe before service could be effected on him. (Dkt. No. 4, at 9-10.) The Court further advised Plaintiff that, upon ascertaining the identity of the Doe Defendant, he must then seek permission to amend the operative pleading to properly name him or her as a Defendant. (*Id.* at 10.)

[2]    The March Order noted that Plaintiff's Complaint included allegations of wrongdoing against fourteen persons, and one entity, not named in the Complaint's caption or "Parties" Section as Defendants in this action. (Dkt. No. 4 at 10.) However, in light of Plaintiff's *pro se* status, the Court construed the Complaint with the utmost of special liberality, and found that Plaintiff was attempting to assert claims against these fourteen persons and the entity. (*Id.* at 11.) As a result, the Court addressed the pleading sufficiency of Plaintiff's claims against these Defendants. (*Id.* at 10-18.)

White arising from his alleged loss of good time-credits and denial of earlier release from incarceration because (a) he could not seek earlier release from incarceration under 42 U.S.C. § 1983, but could do so only by way of a habeas corpus petition brought pursuant to 28 U.S.C. § 2254, (b) he could not seek the restoration of good-time credits (or assert a damages claim under 42 U.S.C. § 1983 that attacked the fact or length of his confinement) without first showing that the conviction or sentence had been reversed or otherwise invalidated, and (c) he failed to allege facts plausibly suggesting that his participation in the Alcohol and Drug Program ("ASAT") counseling would have imposed on him any requirements similar to the admission-of-guilt requirement imposed on participants in the DOCS' Sex Offender Counseling and Treatment Program; and (6) to the extent Plaintiff sought injunctive relief against DOCS based on alleged retaliation, he failed to allege facts plausibly suggesting either that he engaged in speech or conduct protected by the First Amendment, or that DOCS took adverse action against him because of that protected speech or conduct. (Dkt. No. 4 at 10-18.) The Court also dismissed Plaintiff's retaliation claim against DOCS, to the extent that monetary relief was requested, noting that such a claim is barred by the Eleventh Amendment. (*Id*. at 17-18.)

In light of the special status he enjoys as a *pro se* civil rights litigant, Plaintiff was given leave to replead all of his claims that were conditionally dismissed. (*Id*. at 18-19.) However, Plaintiff was expressly advised that his Amended Complaint "must be a complete pleading, which will supersede his original Complaint in all respects, and which may not incorporate any portion of his original Complaint by reference; as a result, in addition to curing the pleading defects described in the preceding paragraph, Plaintiff's Amended Complaint must restate his excessive force claim against C.O. Doe and his failure-to-protect claim against Sergeant Barnes." (*Id*. at 19.)

Plaintiff has now submitted an Amended Complaint in an attempt to comply with this Court's March Order. (Dkt. No. 5.) He has also submitted a motion seeking leave to file a Supplemental

Complaint, in order to add one or more claims against a new Defendant (Dr. Connelly, M.D., of Bear Hill Correctional Facility), arising from events occurring after the date of both his original Complaint and Amended Complaint.  (Dkt. No. 7.)

## III.   REVIEW OF PLAINTIFF'S AMENDED COMPLAINT

As explained in Part III of the Court's March Order, the Court must consider the sufficiency of the allegations that Plaintiff has set forth in his Amended Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(b).

### A.   Governing Legal Standard

Because the legal standard governing the dismissal of a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and Fed. R. Civ. P. 12(b)(6) was set forth in Part III.A. of the Court's March Order, it will not be repeated in this Decision and Order, which is intended primarily for the review of the parties.  The Court will only add that that legal standard also governs amended and supplemental pleadings.

### B.   Summary of Plaintiff's Amended Complaint

As an initial matter, the Court notes that, in many ways, Plaintiff's Amended Complaint is not a substantial improvement upon his original Complaint.  (*Compare* Dkt. No. 1 *with* Dkt. No. 5.)  For example, Plaintiff again names only Defendants Lori Montroy, Sergeant Barnes, and C.O. Doe as Defendants in the caption, despite again appearing to include in the body of the Amended Complaint allegations of wrongdoing by Nurse Nancy Armstrong, Correction Counselor Oey, Regional Director of Health Services Rita Grinsbergs, Health Services Director Lester Wright, ASAT Counselor Ms. Denny, Deputy Superintendent Habeck, Deputy Superintendent Demars, Deputy Superintendent Brown, Superintendent LaClaire, Commissioner Fischer, and Sergeant Dumas.  (*See generally* Dkt. No. 5.)  However, in light of Plaintiff's special status as a *pro se* civil rights litigant, the Court construes his Amended Complaint (as it did his original Complaint) with the utmost liberality and

4

once again considers as Defendants in this action the following individuals: Nurse Nancy Armstrong, Correction Counselor Oey, Regional Director of Health Services Rita Grinsbergs, Health Services Director Lester Wright, ASAT Counselor Ms. Denny, Deputy Superintendent Habeck, Deputy Superintendent Demars, Deputy Superintendent Brown, Superintendent LaClaire, Commissioner Fischer, and Sergeant Dumas.

Turning to the factual allegations of his Amended Complaint, generally Plaintiff alleges, *inter alia*, as follows: (1) DOCS "invalidated his conviction and sentencing" (in an "illegal[]" and "unlawful[]" manner) by "altering [his] sentence and commitment [into a] 3-6 y[ea]r term, rather than the . . . ordered shock incarceration [negotiated in Plaintiff's plea bargain agreement and recommended by the sentencing Judge]"; (2) on July 28, 2005, he was assaulted by C.O. Doe, in the presence of Sergeant Barnes, either before or after which Lori Montroy lied to Sergeant Barnes about "Plaintiff threaten[ing] her"--all in retaliation for Plaintiff "exercising his worker's compensation life time benefits"; (3) over a course of six years, Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and/or the Eighth Amendment by wrongfully forcing him into ASAT; (4) over the same time period, these twelve Defendants have used "conspiracy tactics" and have been "working in collusion" against Plaintiff to wrongfully force him into ASAT; and (5) these actions by these twelve Defendants were in retaliation for Plaintiff "exercising his Worker's Compensation Life Time benefits through the State of New York [and/or ADA]."  (Dkt. No. 5 at 2-6.)

Generally, based on a liberal construction of these factual allegations, Plaintiff's Amended Complaint asserts the following five groups of claims: (1) a due process claim against Defendants Brown, LaClaire, Commissioner Fisher, Parole Officer Fisher, and Parole Officer White arising from (a) Plaintiff's alleged loss of good time-credits and denial of earlier release from incarceration, and

(b) DOCS' illegal alteration of his sentence and/or terms of incarceration; (2) an excessive force claim and retaliation claim against C.O. Doe, a failure-to-intervene claim and retaliation claim against Defendant Barnes, and a due process claim and retaliation claim against Defendant Montroy arising from her lying to Defendant Barnes about Plaintiff threatening her (on or about July 28, 2005); (3) an ADA claim and/or Eighth Amendment claim against Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas arising from their wrongfully forcing him into ASAT; (4) a conspiracy claim against these twelve Defendants based on the same conduct; and (5) a retaliation claim against these twelve Defendants based on the same conduct. (*See generally* Dkt. No. 5.)

    **C.**    **Analysis of Plaintiff's Amended Complaint**

          **1.**    **Plaintiff's Due Process Claims Against Defendants Brown, LaClaire, Commissioner Fisher, Parole Officer Fisher, and White, Challenging His Sentence or Terms of Incarceration**

As an initial matter, the Court finds that Plaintiff's Amended Complaint does not include facts plausibly suggesting a claim against Chairperson Brown, Superintendent LaClaire, Commissioner Fisher, Parole Officer Fisher, and Parole Officer White arising from the loss of good-time credits/earlier release. (Dkt. No. 4 at 15-17.) For example, Plaintiff has not alleged facts plausibly suggesting that (1) his conviction or sentence has actually been invalidated, or (2) he received a mixed sanction. The Court notes that the fact that a judge's recommended criminal sentence (regarding an inmate's prison programming) has been (allegedly) disregarded does not mean that a prison disciplinary conviction (depriving the inmate of good-time credits) has been "invalidated," for purposes of *Heck v. Humphrey*, 512 U.S. 477 (1994). As a result, this claim is dismissed without prejudice. *See Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (noting that "[d]isposition of the case on *Heck* grounds . . . warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction" be invalidated).

6

Turning to Plaintiff's claims that unidentified employees of DOCS unlawfully changed the terms of his sentence and denied him entrance into a shock incarceration program in contravention of his plea agreement and an order of the state sentencing judge (Dkt. No. 5 at 1, 4),[3] the Court begins by noting that Plaintiff has already been advised that he may only challenge the fact or duration of his incarceration by way of a habeas corpus petition brought pursuant to 28 U.S.C. § 2254.  (Dkt. No. 4 at 15.)[4]  Thus, to the extent that Plaintiff challenges the fact or duration of his incarceration, his claim is dismissed without prejudice.

In addition, to the extent that Plaintiff claims that he was wrongfully denied entrance into a shock incarceration program (and instead placed in other programs) in violation of his plea agreement, or a state court order, his claim is dismissed without prejudice for four reasons.  First, as part of the plea agreement, the state court judge only "recommended" that Plaintiff be enrolled in a shock incarceration program, he did not mandate it.  (Dkt. No. 5 at 13.)  Second, Plaintiff previously raised this claim, unsuccessfully, in another action that he filed in this District.  (*See Van Guilder v. State of New York,* 9:09-CV-0874 [NAM/GHL] ["*Van Guilder I*"], Dkt. No. 1 at 2.)[5]  Third, in New York, inmates do not have a constitutional right to participate in a particular program of their

---

[3]       It appears that Plaintiff was placed in one or more other programs instead of the shock incarceration program.  (*See generally* Dkt. No. 5.)

[4]       *See also Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity [of their underlying criminal conviction]."); *Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) ("[H]abeas corpus--not a § 1983 action--provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment . . . .") (citation omitted).

[5]       In *Van Guilder I*, Chief Judge Mordue concluded that the allegations concerning Plaintiff's exclusion from the shock incarceration program were subject to dismissal for failure to state a claim upon which relief may be granted because "[P]laintiff's disagreement with a determination made by prison officials regarding his ability to program does not itself have constitutional significance."  (*Van Guilder I*, Dkt. No. 8 at 4.)  It is well-settled that a district court may dismiss "duplicative or repetitious litigation of identical causes of action . . . under Section 1915(e)."  *Perry v. Fischer*, 08-CV-0602, 2010 WL 1235611, at *5 (N.D.N.Y. Mar. 2, 2010) (Baxter, M.J.) (collecting cases).

choosing.  *See Antonucci v. David*, 03-CV-0653, 2006 WL 2265028, at *6 (N.D.N.Y. Aug. 7, 2006)

(Scullin, J.); *West v. Keane*, 93-CV-6680, 1997 WL 266977, at *4 (S.D.N.Y. May 19, 1997) (noting

that inmates do not have a protected liberty interest in "specific rehabilitative or vocational

program[s]"); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a

prisoner 'any statutory, regulatory or precedential right to his prison job.'") (quoting *Cooper v. Smith*,

63 N.Y.2D 615 [N.Y. 1984]).  Similarly, there is no constitutional right to be excused from any

program assignment to which an inmate is not amenable.  As the Court recognized in *Gill*, "any other

rule would involve the judiciary in discretionary decisions that are not the business of federal

judges." *Id*.  Fourth, Plaintiff does not allege facts plausibly suggesting how Chairperson Brown,

Superintendent LaClaire, Commissioner Fisher, Parole Officer Fisher, and Parole Officer White were

personally involved in the constitutional violation alleged.

For each of these alternative reasons, Plaintiff's claims challenging his sentence or terms of

incarceration are dismissed without prejudice.

### 2.    Plaintiff's Various Claims Against Defendants Doe, Barnes, and Montroy Arising from Events Occurring on July 28, 2005

Construed with the utmost of liberality, Plaintiff alleges that, on July 28, 2005, Defendant

C.O. Doe used excessive against him in the presence of Defendant Sergeant Barnes, who presumably

failed to stop the use of excessive force. (Dkt. No. 5 at 2.)  Plaintiff also alleges that, on the same

day, Defendant Lori Montroy lied to Sergeant Barnes about Plaintiff threatening her.  (*Id*.)  Plaintiff

alleges that these actions were taken in retaliation for him exercising his right to receive Worker's

Compensation benefits.  (*Id*.)

In the original Complaint, Plaintiff did not provide the Court with the date(s) that these

alleged incidents occurred.  (*See generally* Dkt. No. 1.)   In his Amended Complaint, however,

Plaintiff indicates that the foregoing incidents occurred on July 28, 2005.  (Dkt. No. 5 at 2.)  In New

8

York, the statute of limitations for Section 1983 claims is three years from the date of accrual. *See,*

*e.g., Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004). Section 1983 claims accrue

when a plaintiff learns or has reason to learn of the alleged injury that forms the basis of the action.

*See, e.g., Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994). There are occasions when the statute

of limitations may be tolled; tolling of the statute of limitations in Section 1983 actions is governed

by state tolling provisions. *See Wallace v. Kato,* 549 U.S. 384, 394 (2007); *Singleton v. New York,*

632 F.2d 185, 191 (2d Cir. 1980) (quoting *Board of Regents v. Tomanio,* 446 U.S. 478 [1980])

(noting that state tolling rules, like state limitations periods, govern federal actions brought under

Section 1983).

Because Plaintiff's claims of excessive force, failure-to-protect, issuance of false reports, and

retaliation against C.O. Doe, Sergeant Barnes, and Nurse Lori Montroy arose on July 28, 2005, the

statute of limitations expired three years later, on July 28, 2008. The date that a prisoner's complaint

is considered "filed" is the date that he gives it to prison officials for transmission to the District

Court. *See Houston v. Lack*, 487 U.S. 266 (1988); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993).

In this case, the Court presumes that Plaintiff's original Complaint was filed on December 17, 2009

(the date that he signed his original Complaint),[6] more than one year *after* the statute of limitations

had expired. Thus, Plaintiff's claims of excessive force, failure-to-protect, issuance of false reports,

and retaliation against C.O. Doe, Sergeant Barnes, and Nurse Lori Montroy are time-barred unless

the statute of limitations was tolled. Because Plaintiff's Amended Complaint contains no facts

plausibly suggesting that the statute of limitations was tolled, these claims are dismissed. Each of

these claims would be dismissed without prejudice if it were not for the fact that several of those

---

[6]     Under the "prison mailbox rule," the date of *filing* is deemed to be the date that the
prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing,* which is
the date that the complaint was *signed. See Garraway v. Broome County, N.Y.,* 03-CV-0681, 2006
WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006) (McAvoy, J.).

claims suffer from additional pleading defects, warranting a dismissal of those claims with prejudice.

Specifically, with regard to Plaintiff's retaliation claim against these three Defendants arising from the events on July 28, 2005, courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 [2d Cir. 2001]), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). A plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Here, reading Plaintiff's Amended Complaint in a light most favorable to Plaintiff, the Court is nevertheless unable to discern a cognizable claim of retaliation against any of the three referenced Defendants based on the conduct alleged.

In addition, with regard to Defendant Nurse Montroy, the allegation that she "lied" to Sergeant Barnes does not state a due process claim (or any sort of claim) pursuant to Section 1983. Moreover, Plaintiff has already been provided with an opportunity to amend his claims against Defendant Nurse Lori Montroy to state an actionable claim.

Finally, the Court notes that, with regard to his excessive force claim against C.O. Doe, Plaintiff does not allege, in his Amended Complaint, facts plausibly suggesting (1) how C.O. Doe

"assaulted" him, or even (2) that the use of force was unnecessary.  (Dkt. No. 5, at ¶ 4.)  Nor does Plaintiff allege, in his Amended Complaint, facts plausibly suggesting that Sergeant Barnes had an opportunity to intervene and prevent or stop the assault.  (*Id*.)  However, in his original Complaint, Plaintiff did allege such facts.  (Dkt. No. 1, at ¶¶ 6, 7.)  It is true that Plaintiff's Amended Complaint supersedes and replaces his original Complaint in all respects.  However, under the circumstances, the Court will continue to dismiss Plaintiff's excessive-force and failure-to-protects claims against C.O. Doe and Sergeant Barnes, in his Amended Complaint, only without prejudice, out of an extension of special solicitude to him as a *pro se* civil rights litigant.

As a result, Plaintiff's due process claim and retaliation claim against Defendant Montroy is dismissed with prejudice; and Plaintiff's claims of excessive force and failure-to-protect against C.O. Doe and Sergeant Barnes are dismissed without prejudice.

### 3.    Plaintiff's ADA Claim and/or Eighth Amendment Claim Against Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas

Construed with the utmost of special liberality, Plaintiff's Amended Complaint claims that Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas have "medically discriminate[d]" against him by "falsely, unlawfully deeming [him] work/programable" in violation of his rights under the ADA.  (Dkt. No. 5 at 6.)  Title II of the ADA states that, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

Here, as an initial matter, the Court has trouble finding that Plaintiff has alleged facts

11

plausibly suggesting that, during the time in question, he was disabled for purposes of the ADA.[7]  For example, he does not identify the disability from which he allegedly suffers.  Rather, he alleges only that he receives "Worker's Compensation Life Time benefits through the State of New York and or (ADA) American Disability Act Rights [sic]."  (Dkt. No. 5, ¶¶ 7, 12, 13.)  Presumably, his disability relates to the alleged herniated disc from which he suffers.  (*Id*. at ¶¶ 35-38 & Exs.)

In any event, even assuming that Plaintiff has alleged facts plausibly suggesting that (during the time in question) he was disabled for purposes of the ADA, he has not alleged facts plausibly suggesting that he was excluded from programs offered to other inmates because of his disability; nor has he alleged facts plausibly suggesting that he was denied reasonable accommodations necessary to provide him access to prison activities and programs.  (*See generally* Dkt. No. 5.)[8]  Rather, Plaintiff conclusorily alleges only that his disability entitled him to a blanket excuse from *all* work and program assignments.  (*Id*.)[9]

For the sake of brevity, the Court will set aside the fact that Plaintiff also implicitly alleged that he was physically able to participate in the rigorous Shock Incarceration Program.  (Dkt. No. 1, at ¶¶ 1, 2, 14, 16, 17, 19 & Exs.)  The more important point is that Plaintiff has not alleged facts plausibly suggesting how his alleged disability precluded him from participating in the particular

---

[7]     The Court notes that, under the ADA, a "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

[8]     *See Devivo v. Butler*, 97-CV-7919, 1998 WL 788787, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing vision-impaired inmate's ADA claim based on failure to allege that denial of prison service, program, or activity occurred because of disability).

[9]     For example, he claims that the referenced Defendants "[f]orced [him to participate in] Administrative / Unilateral Work / Programing" by "deeming [him] work / programable." (*Id*. at ¶¶ 9, 12, 27, 33.)

prison work or program assignment(s) for which he was deemed fit by the referenced Defendants. (*Id.*) This pleading deficiency is significant because, as has been recognized by then-District Judge Denny Chin, a claim by a disabled prisoner that he has been wrongfully required to participate in an activity in prison is not actionable under the ADA. *See Singleton v. Perilli*, 03-CV-2271, 2004 WL 74238, at *4 (S.D.N.Y. Jan. 16, 2004) (Chin, J.) ("Plaintiff alleges that defendant violated his rights under the ADA by failing to excuse plaintiff from his academic program and withholding access to corrective eye surgery. . . . Plaintiff fails, however, to allege anywhere in complaint that he was denied access to a service, program, or activity because of his disabled status. . . . To the contrary, his claim is not that he was prohibited from participating in an activity, but that he was required to participate. This is simply not a valid ADA claim.").[10] For all of these reasons, the Court finds that this claim is not cognizable under the ADA, and it is therefore dismissed.

Moreover, construed with the utmost of special liberality, Plaintiff's Amended Complaint claims that Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas were deliberately indifferent to his serious medical needs by "falsely, unlawfully deeming [him] work/programable" in violation of his rights under the Eighth Amendment. Generally, to state a claim of inadequate medical care under the Eighth Amendment, a plaintiff must allege facts plausibly suggesting two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). To be sufficiently serious for purposes of the Eighth Amendment, a medical condition must

---

[10]      The Court notes "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Such suits are permitted against state officials in their individual capacities only if the plaintiff has alleged facts plausibly suggesting that the Title Vii violation was motivated by either discriminatory animus or ill will due to disability. *Garcia*, 280 F.3d at 112.

be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied,* 513 U.S. 1154 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998).  To act with a sufficiently culpable mental state for purposes of the Eighth Amendment, a prison official must possess "a state of mind more blameworthy than negligence."[11]  This is because deliberate indifference is a state of mind akin to criminal recklessness.[12]

Here, as an initial matter, the Court has trouble finding that Plaintiff has alleged facts

---

[11]    *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence. . . .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[12]    *Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

plausibly suggesting that, during the time in question, he suffered from a sufficiently serious medical need for purposes of the Eighth Amendment.  Rather, Plaintiff merely alleges, in conclusory fashion, that "Defendants [sic] inadequate medical care causes constant severe prolonged pain and suffern [sic], numbness radiating down both legs, from waiste [sic] down to tip of toes, with burning and pins and needles sensation."  (Dkt. No. 5, at ¶ 37.)

In any event, even assuming that Plaintiff has alleged facts plausibly suggesting that (during the time in question) he suffered from a sufficiently serious medical need for purposes of the Eighth Amendment, he has not alleged facts plausibly suggesting that any Defendant was deliberately indifferent to his "total dis[a]bility." (*See generally* Dkt. No. 5.)   In fact, Plaintiff has alleged no facts plausibly suggesting that those who were responsible for assigning him to facility programs were aware of his alleged disability.  (*Id*.)  To the contrary, he actually alleges that Defendants "lack[ed] . . . Medical Knowledge pertaining to . . . Plaintiff disability [sic]."  (*Id*. at 26.)  At best, Plaintiff has alleged facts plausibly suggesting that his treating physicians in the prison--who decided to treat his condition by prescribing him medication--disagreed with the medical diagnosis of his orthopedic surgeon.  (*Id*. at ¶¶ 23-25, 35-36, 38.)  However, as indicated above, "[m]ere negligence in the treatment of an individual's physical condition, or claims based on differences of opinions over matters of medical judgment, fail to rise to the level of a § 1983 violation." *Sloan v. Zelker*, 362 F. Supp. 83, 84 (S.D.N.Y. 1973).[13]  For all of these reasons, the Court finds that this claim is not

---

[13]     *See also Maccharulo v. Gould*, 643 F. Supp.2d 587, 600 (S.D.N.Y. 2009) ("Plaintiffs' conclusory allegation that Defendant Rizzo 'showed conscious and deliberate indifference to [Decedent's] psychological disabilities when [he] accepted, acquiesced, and failed to prevent his designation [from Auburn back] to Fishkill . . . knowing it to be an unsuitable facility ill-equipped to meet [Decedent's] needs' . . . , is insufficient to demonstrate that Rizzo was anything more than an observer or bystander with respect to the transfer back to Fishkill, showing neither that he had any authority to prevent or reject the transfer nor that anything Rizzo did or failed to do in connection with the transfer was even negligent."); *Culp v. Koenigsmann*, 99-CV-9557, 2000 WL 995495 at *9 (S.D.N.Y. July 19, 2000) (Peck, M.J.) (Plaintiff's deliberate indifference "claim is based on the fact that one doctor recommended arthroscopic surgery . . . while another doctor . . . concluded that surgery was not warranted until more conservative measures like physical therapy had been tried and

cognizable under the Eighth Amendment, and it is therefore dismissed.

> **4.    Plaintiff's Conspiracy Claim Against Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas Arising from Their Attempt to Wrongfully Force Him to Participate in Work Programs**

In his original Complaint, Plaintiff alleged that seven individuals--Nurse Armstrong, Correctional Counselor Ms. Oey, Regional Director of Health Services Rita Grinsbergs, Health Services Director Lester Wright, ASAT Counselor Ms. Denny, Deputy Superintendent Habeck, and Deputy Superintendent Demars--acted in "collusion" with each other by "[]not accept[ing] the medical fact that [P]laintiff is totally disabled," which caused him to have to participate in work and program assignments from which he should have been excused.  (Dkt. No. 1 at 6-7.)

In his Amended Complaint, Plaintiff alleges that twelve Defendants--Lori Montroy, Nancy Armstrong, Corrections Counselor Oey, Regional Director of Health Services Grinsbergs, Health Services Director Lester Wright, ASAT Counselor Ms. Denny, Deputy Superintendent Habeck, Deputy Superintendent Demars, Deputy Superintendent Brown, Superintendent LaClaire, Commissioner Fischer, and Sergeant Dumas--have worked "in concert together against Plaintiff" to (1) force him into programs for which he is medically ineligible, and (2) not "honor Plaintiff['s] controlling treating orthopedic surgeon diagnosis, total disability [sic] status of Plaintiff."  (Dkt. No. 5 at 5-8.)

In the March Order, the Court advised Plaintiff as follows:

> To be actionable, a conspiracy claim under § 42 U.S.C. 1983 must allege facts plausibly suggesting the following: (1) an agreement

---

failed. At most, [plaintiff]'s treatment reflects a difference in opinion as to his medical treatment rather than any deliberate indifference to his medical needs."); *Cole v. Artuz*, 97-CV-0977, 2000 WL 760749, at *7 (S.D.N.Y. June 12, 2000) ("[T]he fact that another physician determined that Cole was unfit for academic and vocational programs does not demonstrate that Selwin was deliberately indifferent to Cole's medical needs.").

existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Concepcion v. City of New York*, 05-CV-8501, 2008 WL 2020363, at *5 (affirming the continued viability of the *Ciambriello* standards when analyzing a conspiracy claim vis a vis a motion to dismiss). Vague and conclusory allegations that parties have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). Finally, a Section 1983 conspiracy claim must not only allege a conspiracy, but also the "actual deprivation of constitutional rights." *Romer v. Morgenthau*, 119 F. Supp.2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin*, 901 F. Supp. 757, 765 [S.D.N.Y. 1995]). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *See Romer*, 119 F. Supp. 2d at 363-64.

(Dkt. No. 4 at 12-13.)

Here, as in his original Complaint, Plaintiff's allegation that the twelve above-referenced DOCS employees worked in "collusion" to force him into programming and/or deny him adequate medical care is wholly conclusory and unsupported by facts.[14]  More specifically, even when construed with the utmost of special leniency, the Court finds that any allegations of an agreement and an overt act in the Amended Complaint are wholly conclusory and unsupported by facts.  The

---

[14]    Plaintiff has attached to the Amended Complaint a copy of a Workers' Compensation Report dated June 23, 2004 which was issued by an orthopedic surgeon.  (Dkt. No. 5 at 15.)  The Report indicates that on June 23, 2004, Plaintiff was suffering from a "Temporary Total" disability. (*Id*. at 16.)  However, even incorporating this attachment into the Amended Complaint, Plaintiffs has failed to allege facts plausibly suggesting that one or more of the named Defendants forced him to participate in certain programs, within the limitations period, despite being aware of the fact that Plaintiff was unable to do so.  Moreover, Plaintiff has failed to allege facts plausibly suggesting that he was denied medical care, let alone that the denial was by one or more Defendants, who were deliberately indifferent to his needs.

17

Court notes, as it did in the March Order, that while it must construe the factual allegations in a *pro se* pleading in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Simply put, while detailed factual allegations are not required, a complaint that tenders "naked assertion[s]" devoid of "further factual enhancement" does not suffice. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 [2007]).

In the alternative, Plaintiff's conspiracy claims, as currently articulated, are barred by what is known as the "intracorporate conspiracy doctrine," which essentially bars conspiracy claims against employees of entities such as DOCS (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's "scope of employment" exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed. *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 469-70 (N.D.N.Y. 2009) (Suddaby, J., adopting Report-Recommendation of Lowe, M.J.) (collecting cases).

Finally, the Court notes that, to the extent Plaintiff's conspiracy claim arises from the imposition of "forced work/program assignments," that claim is factually similar to a claim asserted by Plaintiff in *Van Guilder I*,[15] which was dismissed by Chief Judge Norman A. Mordue on November 20, 2009, for failure to state a claim upon which relief can be granted. *Van Guilder I*, Decision and Order, at 3-5. While the conspiracy claim in *Van Guilder I* was dismissed without prejudice, permitting Plaintiff to refile it, the Court notes that Plaintiff's current conspiracy claim is equally as vague and conclusory as the conspiracy claim that was (1) asserted in *Van Guilder I,* and (2) asserted in his original Complaint in this action.

---

[15]    *See Van Guilder I*, Amended Complaint, at ¶¶ 5-12 (alleging that Nurse Armstrong colluded with Counselor Oey and Dr. Cahill to alter Plaintiff's medical restrictions at Franklin Correctional Facility for the purpose of causing him to participate in forced work/program assignments).

For each of these reasons, the Court dismisses Plaintiff's claim that the above-described twelve DOCS employees conspired to wrongfully force him to participate in work programs in violation of the Eighth Amendment and/or ADA.

> **5.    Plaintiff's Retaliation Claim Against Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas**

Plaintiff alleges, in wholly conclusory fashion, that Defendants Montroy, Armstrong, Oey, Grinsbergs, Wright, Denny, Habeck, Demars, Brown, LaClaire, Fischer, and Dumas retaliated against him "for exercising his Worker's Compensation life time benefits through the State of New York [and /or the ADA]."  (Dkt. No. 5 at 3.)

As explained above in Part III.C.2. of this Decision and Order, courts must approach claims of retaliation with skepticism and particular care because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.  A plaintiff asserting a First Amendment retaliation claim must advance non-conclusory allegations establishing the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech or conduct and the adverse action.

Here, reading the Amended Complaint in a light most favorable to Plaintiff, the Court is nevertheless unable to discern a cognizable claim of retaliation against any of the twelve referenced Defendants in violation of Plaintiff's First Amendment rights.  For example, even assuming that "exercising . . . Worker's Compensation life time benefits" is protected activity under the First Amendment, Plaintiff fails to allege, among other things (1) when he "exercis[ed] his Worker's Compensation life time benefits," (2) that any of the Defendants were aware (or could have been aware) of this fact, (3) that there was a temporal proximity between when he "exercis[ed] his

Worker's Compensation life time benefits" and when he suffered adverse action (i.e., was forced to work in programs not of his choosing), (4) who was responsible for placing him in the programs that he did not wish to participate in, and/or (5) that he would not otherwise have been forced to work in the programs that he was forced to work in.

For these reasons, Plaintiff's retaliation claim against the above-described twelve Defendants is dismissed.

### 6.    Plaintiff's Request for Injunctive Relief Against Defendants

In his Amended Complaint, Plaintiff requests injunctive relief "against Defendants, for forced administrative/unilaterl [*sic*] imposition of work/programming assignments." (Dkt. No. 5 at 9.) Plaintiff has advised the Court, however, that he has been released from the custody of the New York State Department of Corrections. (Dkt. No. 8.)[16]

"Where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot." *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008). As a result, Plaintiff's request for injunctive relief against Defendants is dismissed as moot.

### 7.    Plaintiff's Claim Against Defendant Dumas Arising from the Misbehavior Report, and Plaintiff's Claim Against Defendant Guerin Arising from the Disciplinary Hearing

In its March Order, the Court found, in pertinent part, that Plaintiff failed to state a claim for relief, pursuant to Section 1983, with respect to his claim against Sergeant Dumas arising from the misbehavior report, and his claim against Lieutenant Guerin arising from the disciplinary hearing. (Dkt. No. 4.) The Court also found that these claims would be dismissed if Plaintiff did not reassert them in an actionable form in his Amended Complaint. (*Id*.) In his Amended Complaint, Plaintiff

---

[16]    *See also* http://nysdocslookup.docs.state.ny.us (information for Inmate Christopher Van Guilder, DIN 04-A-5370) (last visited December 28, 2010).

did not attempt to reassert these claims.  (*Compare* Dkt. No. 1 *with* Dkt. No. 5.)  As a result, these claims are dismissed without prejudice pursuant to the Court's March Order.  (Dkt. No. 5, at 18.)

## IV.    ANALYSIS OF PLAINTIFF'S MOTION TO SUPPLEMENT

Plaintiff has submitted a letter seeking leave to "amend" his Complaint so as to name Dr. Connelly, M.D., of Bare Hill Correctional Facility, as an additional Defendant in this action.  (Dkt. No. 7.)  More specifically, Plaintiff's claim or claims against Dr. Connelly arise from Plaintiff's allegation that, on or about June 16, 2010, at Bear Hill Correctional Facility, Dr. Connelly "illegal[ly]" altered Plaintiff's "medical excuse restrictions . . . without evaluating Plaintiff in person," other than on April 21, 2010.  (Dkt. No. 7.)[17]

Because Plaintiff's proposed claim arises from events that occurred *after* the date of his original Complaint (December 17, 2009), and the date of is Amended Complaint (April 4, 2010), that proposed claim would not "amend" his original Complaint or Amended Complaint, but "supplement" his original Complaint or Amended Complaint.  *See* Fed. R. Civ. P. 15(d); N.D.N.Y. L.R. 7.1(a)(4).

Like a motion to amend a pleading, a motion to supplement a pleading is governed by Fed. R. Civ. P. 15, which states that leave to amend shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3rd 1127, 1133 (2d Cir. 1993).  The decision to grant or deny a motion to supplement is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion.  *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

Because of the need to clarify what supplemental claims are being permitted, the Local Rules require that (1) "[t]he party [requesting leave to supplement a pleading] must number the paragraphs in the proposed pleading consecutively to the paragraphs contained in the pleading that it seeks to

---

[17]    Construed with the utmost of special liberality, Plaintiff's claim against Dr. Connelly arises under the Eighth and/or Fourteenth Amendments to the United States Constitution and the Americans with Disabilities Act.

supplement," and (2) "the party requesting leave to supplement must set forth specifically the proposed supplements and identify the supplements in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means."  N.D.N.Y. L.R. 7.1(a)(4).

Here, Plaintiff's motion to supplement has fulfilled neither of these requirements.  Moreover, Plaintiff's proposed claim, as pled, fails to allege facts plausibly suggesting that Dr. Connelly acted with the sort of criminal recklessness necessary to incur liability under 42 U.S.C. § 1983 and the United States Constitution; rather, Plaintiff has alleged facts plausibly suggesting, at most, negligence on the part of Dr. Connelly.  For each of these alternative reasons, the Court denies Plaintiff's motion to file a Supplemental Complaint.

**ACCORDINGLY**, it is

**ORDERED** that each of the claims asserted in Plaintiff's Amended Complaint (Dkt. No. 5) is **<u>DISMISSED</u> with prejudice**, **EXCEPT** for the following claims, which are **<u>DISMISSED</u> without prejudice**: (1) Plaintiff's due process claims against Chairperson Brown, Superintendent LaClaire, Commissioner Fisher, Parole Officer Fisher, and Parole Officer White, challenging his sentence or terms of incarceration; and (2) his claims of excessive force, failure-to-protect, issuance of false reports, and retaliation against C.O. Doe and Sergeant Barnes, arising from the events of July 28, 2005; and it is further

**ORDERED** that also **<u>DISMISSED</u>** from this action **without prejudice**--pursuant to the Court's March Order and the fact that Plaintiff did not attempt to reassert them in an actionable form in his Amended Complaint--are the following claims: (1) Plaintiff's claim against Sergeant Dumas arising from the misbehavior report; and (2) his claim against Lieutenant Guerin arising from the disciplinary hearing; and it is further

      **ORDERED** that Plaintiff's motion for leave to file a Supplemental Complaint (Dkt. No. 7) is

**DENIED**; and it is further

      **ORDERED** that the Clerk's Office is instructed to issue a Judgment for Defendants and

close this action.

Dated: January 19, 2011
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge